# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-60299-CIV-MOORE

TIFFANY (NJ) LLC,

             Plaintiff,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

             Defendants.

_____/

## PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF
## TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND
## ORDER RESTRAINING TRANSFER OF ASSETS
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

        Plaintiff, Tiffany (NJ) LLC ("Tiffany"), hereby does apply, on an *ex parte* basis, for entry of a temporary restraining order and an order restraining transfer of assets, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto ("Defendants") pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a). In support thereof, Tiffany submits the following memorandum of law.

## I.    <u>INTRODUCTION</u>

        Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing and/or using counterfeits and confusingly similar imitations of one or more of Tiffany's registered trademarks within this district and throughout the United States by operating Internet based e-commerce stores and photo albums established via at least one third-party marketplace, social media, or image hosting website under their seller identities identified on Schedule "A" hereto (the "Seller IDs") and an interactive, commercial Internet website operating under the domain name identified on Schedule "A" hereto (the "Subject Domain Name"). Specifically, Tiffany has obtained evidence clearly demonstrating that (a) Defendants are engaged in the advertisement, offering for sale, and sale of counterfeit and infringing versions of Tiffany's goods; and (b) Defendants accomplish their sales of counterfeit

and infringing goods via the Internet through the use of, at least, the Seller IDs operated via Internet marketplace, social media, or image hosting websites, and the Subject Domain Name. Based on this evidence, Tiffany's Complaint alleges claims for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement.

Defendants' unlawful activities have deprived and continue to deprive Tiffany of its right to determine the manner in which its trademarks are presented to the public. Indeed, Defendants have and continue to wrongfully trade and capitalize on Tiffany's reputation and goodwill and the commercial value of Tiffany's trademarks. By their activities, Defendants are defrauding Tiffany, certain non-party businesses, and the consuming public for their own benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Tiffany ongoing irreparable harm. Accordingly, Tiffany is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful use of Tiffany's trademarks.

Tiffany also seeks to restrain the illegal profits generated by Defendants. Tiffany has obtained evidence that Defendants operating their Seller IDs via AliExpress.com ("AliExpress") have their payments processed on their behalf using aggregate escrow accounts in the name of Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform (i.e., "AliExpress"), and its related companies, Zhejiang Ant Small and Micro Financial Services Group Co., Ltd., AliPay (China) Internet Technology Co. Ltd., and Alipay.com Co., Ltd. (collectively referred to as "Alipay").[1] Tiffany also obtained evidence that the Defendants operating their Seller IDs via DHgate.com have their payments processed on their behalf via DHgate.com's third-party payment service, DHpay.com. Additionally, Tiffany obtained conclusive evidence that Defendants operating their Seller IDs via Instagram.com and Yupoo.com, and their Subject Domain Name use money transfer and retention services with PayPal, Inc. ("PayPal") as a method for accepting payment for the sale of their counterfeit products. Tiffany also obtained evidence that Defendants operating their Seller IDs via Joom.com, which is operated by SIA Joom ("Joom"), have their payments processed on their behalf using an aggregate escrow account in the name of Joom. Moreover, Defendants operating

---

[1] Worldpay US, Inc. ("Worldpay") processes transactions on behalf of Alibaba and Alipay, which may appear as "Aliexpress" on a cardholder's credit card statement. (See Declaration of Virgilio Gigante in Support of Plaintiff's Application for Temporary Restraining Order ["Gigante Decl."] ¶ 5, filed herewith.)

their Seller IDs via Wanelo.co have their payments processed on their behalf via Wanelo.co, which utilizes Stripe, Inc. for payment processing. Finally, Defendants operating their Seller IDs via Wish.com have their payments processed on their behalf using an aggregate escrow account in the name of ContextLogic Inc.

The Lanham Act allows Tiffany to recover the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing goods. See 15 U.S.C. § 1117(a). In light of the inherently deceptive nature of the counterfeiting business, Tiffany has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. Accordingly, to preserve the disgorgement remedy, Tiffany seeks an *ex parte* order restraining Defendants' assets, including specifically, funds transmitted through AliPay, Worldpay, PayPal, ContextLogic, and the DHgate.com, Joom.com, and Wanelo.co platforms (collectively, the "Financial Entities").

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Rights.

Tiffany is the owner of all rights in and to the federally registered trademarks identified in Paragraph 4 of the Declaration of Brian Kristel in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order (the "Tiffany Marks"), which are used in connection with the manufacture and distribution of high quality luxury goods in the categories identified therein. (See Declaration of Brian Kristel in Support of Plaintiff's Application for Temporary Restraining Order ["Kristel Decl."] ¶¶ 4-5, filed herewith, see also United States Trademark Registrations for the Tiffany Marks [the "Tiffany Trademark Registrations"] attached as Comp. Ex. 1 to the Complaint (ECF No. 1-2), incorporated herein by reference.) The Tiffany Marks are symbols of Tiffany's quality, reputation, and goodwill and have never been abandoned. (See Kristel Decl. ¶¶ 6-7.)  Moreover, Tiffany has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks. (Id.)  Accordingly, the Tiffany Marks are famous marks as the term is used in 15 U.S.C. § 1125(c)(1).

Furthermore, Tiffany has extensively used, advertised, and promoted the Tiffany Marks in the United States in interstate commerce in association with its high quality luxury goods, and has carefully monitored and policed the use of the Tiffany Marks. (Kristel Decl. ¶¶ 5-7.)  As a result of Tiffany's efforts, the Tiffany Marks have acquired fame in the consumer market. (Id.) The Tiffany Marks are among the most widely recognized trademarks in the United States. (Id.)

The Tiffany Marks have come to symbolize the enormous goodwill of Tiffany's genuine products throughout the United States. (Id.) At all times relevant hereto, Defendants have been aware of Tiffany's (a) ownership of the Tiffany Marks; (b) exclusive rights to use such Marks; and (c) substantial goodwill embodied in, and favorable recognition for, the Tiffany Marks.

**B.    Defendants Wrongfully Use Plaintiff's Trademarks.**

Defendants do not have, nor have they ever had, the right or authority to use the Tiffany Marks for any purpose. (Kristel Decl. ¶¶ 9, 12.)  However, despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their respective Seller IDs and Subject Domain Name, goods bearing and/or using counterfeit and infringing trademarks that are exact copies of the Tiffany Marks, without authorization ("Defendants' Goods"). (Kristel Decl. ¶¶ 9-13; Declaration of Virgilio Gigante in Support of Plaintiff's Application for Temporary Restraining Order ["Gigante Decl."] ¶ 2; Declaration of Eric Rosaler in Support of Plaintiff's Application for Temporary Restraining Order ["Rosaler Decl."] ¶ 4, filed herewith; Declaration of Kathleen Burns in Support of Plaintiff's Application for Temporary Restraining Order ["Burns Decl."] ¶ 4, filed herewith; see also web pages and images from Defendants' e-commerce stores, photo albums, and commercial websites operating under the Seller IDs and Subject Domain Name displaying the Tiffany branded items offered for sale ["Defendants' Seller IDs and Subject Domain Name"] attached as Comp. Exs. 1 through 3 to the Rosaler Decl. and Comp. Exs. 1 through 4 to the Burns Decl.)

Given Defendants' slavish copying of the Tiffany Marks, Defendants' Goods offered for sale and sold under identical marks are indistinguishable to consumers, both at the point of sale and post-sale. By using the Tiffany Marks, Defendants have created a false association between their counterfeit and infringing goods and e-commerce stores, photo albums, and domain name, and Tiffany.  Such false association is in violation of 15 U.S.C. § 1125(a) and is causing and will continue to cause Tiffany irreparable harm and damage. (See Kristel Decl. ¶¶ 8, 17.)

As part of its ongoing investigation regarding the sale of counterfeit and infringing products, Tiffany's counsel retained AED Investigations, Inc. ("AED") and Invisible Inc, both licensed private investigative firms, to investigate the promotion and sale of counterfeit and infringing Tiffany branded products by Defendants and to determine Defendants' payment account data for receipt of funds paid for the sale of counterfeit versions of Tiffany's branded merchandise through the Seller IDs and Subject Domain Name. (Kristel Decl. ¶ 10; Gigante

Decl. ¶ 2; Rosaler Decl. ¶ 3; Burns Decl. ¶ 3.)  AED and Invisible Inc collectively accessed the e-commerce stores and photo albums operating under Defendants' Seller IDs[2] and the websites operating under Defendants' Subject Domain Name, placed orders from each Defendant for the purchase of various products – all bearing and/or using counterfeits of, at least, one of the Tiffany Marks at issue in this action[3] – and requested each product to be shipped to one of their addresses in the Southern District of Florida.[4]  (Rosaler Decl. ¶ 4 and Comp. Exs. 1 through 3 thereto; Burns Decl. ¶ 4 and Comp. Exs. 1 through 4 thereto.)[5] Each order was processed entirely online, and following the submission of each order, AED and Invisible Inc finalized payment for the various products ordered from Defendants via Defendants' respective payment accounts and/or payee[6] as identified on Schedule "A" hereto.[7] At the conclusion of the process, the

---

[2] Defendants operate their respective e-commerce stores through the non-party e-commerce marketplace platforms AliExpress.com, DHgate.com, Joom.com, Wanelo.co, and Wish.com, and their respective photo albums via non-party social media or image hosting websites, Instagram.com and Yupoo.com. (See Rosaler Decl. ¶ 4; Burns Decl. ¶ 4; Gigante Decl. ¶¶ 5-10.)

[3] Many of the Defendants blurred-out and/or physically altered the images of Plaintiff's trademarks on the product being offered for sale via their respective e-commerce store and/or photo album. The products AED and Invisible Inc received from these Defendants bear Tiffany's trademarks in their entirety.  True and correct photographs of the Tiffany-branded products AED and Invisible Inc received from certain Defendants who blurred-out and/or physically altered the images of the Plaintiff's trademarks on their product listing are included in Composite Exhibits "1" and "3" to the Rosaler Decl. and Composite Exhibits "1" and "4" to the Burns Decl. (See Rosaler Decl. ¶ 4, n.3; Burns Decl. ¶ 4, n.3; Gigante Decl. ¶ 2, n.1.)

[4] Invisible Inc did not complete a buy from Defendant Number 53's alias website, mandyjewelry.cn, to avoid contributing money to the Defendant's coffers. (See Burns Decl. ¶ 4, n.4.)

[5] Certain Defendants use their Seller IDs in tandem with electronic communication in order to complete their offer and sale of Tiffany-branded products. Specifically, Defendants use private messaging applications and/or services such as WhatsApp to electronically communicate with potential consumers in order to complete their offer and sale of counterfeit Tiffany-branded products. Defendants' relevant contact information is listed on Schedule "A" hereto. (See Rosaler Decl. ¶ 4, n.1; Burns Decl. ¶ 4, n.1.)

[6] Defendant Numbers 1-3 operate via the non-party Internet marketplace platform, AliExpress.com, and have their payments processed on their behalf using Alipay. (See Rosaler Decl. ¶ 4, n.4; Gigante Decl. ¶ 5.) As such, Defendants' payment information is not publicly disclosed. (See id.)

detailed web page captures and images of the various Tiffany branded products offered for sale and/or ordered via Defendants' Seller IDs and Subject Domain Name, together with photographs of many of the products received, were sent to Tiffany's representative, Brian Kristel, for inspection. (See Rosaler Decl. ¶ 4; Burns Decl. ¶ 4; Kristel Decl. ¶ 11; Gigante Decl. ¶ 2.)

Tiffany's representative, Brian Kristel, who has the ability to identify the distinctions between genuine Tiffany branded merchandise and counterfeit copies of the same, conducted a review and visually inspected the detailed web page captures reflecting the Tiffany branded products identified and captured by AED and Invisible Inc, together with photographs of certain received goods, and determined the products were non-genuine, unauthorized versions of Tiffany's goods. (Kristel Decl. ¶¶ 10-13.)

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison, courts have found that even marks that are

---

Defendant Numbers 4-71 operate via the non-party Internet marketplace platform, DHgate.com, which processes its payments via the third-party platform, DHpay.com. (See Rosaler Decl. ¶ 4, n.4; Burns Decl. ¶ 4, n.5; Gigante Decl. ¶ 6.) The DHgate.com and DHpay.com platforms are operated by the Dunhuang Group, who utilizes Camel FinTech Inc to process transactions and deal with refunds and chargebacks on behalf of DHgate.com to its customers. (Gigante Decl. ¶ 6.)

Defendant Numbers 53 and 72 use money transfer and retention services with PayPal. (See Rosaler Decl. ¶ 4, n.4; Burns Decl. ¶ 4, n.5; Gigante Decl. ¶ 7.)

Defendant Numbers 73-75 operate via the non-party e-commerce marketplace platform Joom.com, which is operated by SIA Joom. "Joom USA Inc" was identified as the PayPal payee for Invisible Inc's orders from Defendant Numbers 73-75. (See Burns Decl. ¶ 4, n.5; Gigante Decl. ¶ 8.)

Defendant Numbers 76-77 operating under their Seller IDs via the Wanelo.co marketplace platform had their payments processed on their behalf via Wanelo.co, which utilizes Stripe, Inc. ("Stripe") for payment processing, which appeared as "Wanelo" on Invisible Inc's credit card statement for the orders made from these Defendants. (See Burns Decl. ¶ 4, n.5; Gigante Decl. ¶ 9.)

The payee for the order placed from Defendant Number 78's Wish.com Seller ID identifies "PayPal *Wish." "WISH (ContextLogic Inc.)" is the named PayPal recipient for individual transactions conducted with sellers through Wish.com. (See Burns Decl. ¶ 4, n.5; Gigante Decl. ¶ 10.)

[7]   Additional contact email addresses for Defendants are also identified on Schedule "A" hereto. (See Rosaler Decl. ¶4, n.2; Burns Decl. ¶4, n.2; Gigante Decl. ¶ 3, n.2.)

slightly modified from the registered marks copied are to be considered counterfeit marks. See Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1 (S.D. Fla. 1983). A comparison of the Tiffany Marks to the marks and designs used by Defendants in connection with the promotion and sale of Defendants' Goods reveals the obvious counterfeit and infringing nature of Defendants' Goods. (Compare Tiffany's Trademark Registrations [Comp. Ex. 1 to the Compl.] with Defendants' Seller IDs and Subject Domain Name [Comp. Exs. 1 through 3 to the Rosaler Decl. and Comp. Exs. 1 through 4 to the Burns Decl.].) Defendants' Goods bearing and/or using counterfeits of the Tiffany Marks are being promoted, advertised, offered for sale, and sold by Defendants to consumers within this district and throughout the United States. (See Gigante Decl. ¶ 2; Rosaler Decl. ¶ 4; Burns Decl. ¶ 4.) Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them. Defendants are also falsely representing to consumers that their counterfeit and infringing branded goods are genuine, authentic, endorsed, and authorized by Tiffany. Ultimately, Defendants' Internet activities amount to nothing more than illegal operations infringing on Tiffany's intellectual property rights. The Seller IDs and Subject Domain Name and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Tiffany.

## III.   ARGUMENT

### A.   A Temporary Restraining Order is Essential to Prevent Immediate Injury.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b). This is such a case.

Defendants herein fraudulently promote, advertise, sell, and offer for sale goods bearing and/or using counterfeits and infringements of the Tiffany Marks via their e-commerce stores, photo albums, and Internet website using, at least, the Seller IDs and Subject Domain Name. By their actions, Defendants are creating a false association in the minds of consumers between Defendants and Tiffany. Specifically, Defendants are wrongfully using counterfeits and infringements of the Tiffany Marks to increase consumer traffic to their illegal operations. The entry of a temporary restraining order would serve to immediately stop Defendants from

benefiting from their wrongful use of the Tiffany Marks and would preserve the status quo until such time as a hearing can be held.  See Dell Inc. v. BelgiumDomains, LLC, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order without notice, Defendants can and, based upon Tiffany's counsel's past experience, will significantly alter the status quo before the Court can determine the parties' respective rights. In particular, the e-commerce stores, photo albums, and the domain names and associated websites at issue are under Defendants' complete control. Thus, Defendants have the ability to change the ownership or modify domain registration, e-commerce store, photo album, and private messaging account data and content, change payment accounts, redirect consumer traffic to other seller identification names, private messaging accounts, and websites, and transfer assets and ownership of the Seller IDs and Subject Domain Name. (See Gigante Decl. ¶ 4.)  Such modifications can happen in a short span of time after Defendants are provided with notice of this action. (Id.) Defendants can also easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo.  (Id.)  In short, absent a temporary restraining order, Defendants could completely erase the status quo.  (Id.) As Defendants engage in illegal trademark counterfeiting and infringing activities, Tiffany has no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal trademark law. (Id.)

Moreover, federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"); see also Mycoskie, LLC v. 1688best, Case No. 18-cv-60925-KMM (S.D. Fla. July 2, 2018) (Order granting *Ex Parte* Application for Temporary Restraining Order); Cartier International, A.G. v. replicapaneraiwatches.cn, Case No. 17-cv-62401-KMM

(S.D. Fla. Jan. 2, 2018) (same). This Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order which precludes Defendants from continuing to display their infringing content via the e-commerce stores, photo albums, and website or modifying or deleting any related content or data.  Only such an order will prevent ongoing irreparable harm and maintain the status quo.

> **B.   Standard for Temporary Restraining Order and Preliminary Injunction.**

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same.  See Emerging Vision, Inc. v. Glachman, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing Siegel v. LePore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)).  In order to obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).  Tiffany's evidence establishes all of the relevant factors.

> **1.   Probability of Success on the Merits of Tiffany's Claims.**

> **a)   Likelihood of Success on Counterfeiting Claim.**

Title 15 U.S.C. §1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114 (2018).  Tiffany must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the trademarks is without Tiffany's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. See 15 U.S.C. § 1114(1).  Tiffany's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

The first two elements of Tiffany's trademark counterfeiting and infringement claim are easily met. The Tiffany Marks are owned by Tiffany and registered on the Principal Register of

the United States Patent and Trademark Office, and all but one of the marks at issue herein have become "incontestable" under 15 U.S.C. §§ 1058 and 1065.[8]  (See Kristel Decl. ¶ 4; see also Tiffany Trademark Registrations, attached as Comp. Ex. 1 to the Compl.) See Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546, 1554 (S.D. Fla. 1990) ("Incontestable status provides conclusive evidence of the registrant's exclusive right to use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act.").  Moreover, Defendants have never had the right or authority to use the Tiffany Marks.  (Kristel Decl. ¶¶ 9, 12.)

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1506 (11th Cir. 1985). These factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion.  See 675 F.2d 1160, 1164 (11th Cir. 1982); see also Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997).  The seven factors listed are to be weighed and balanced and no single factor is dispositive.  (Id.)

### (1)    Strength of the Marks.

A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. See Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 362 (11th Cir. 1997).  The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992).  Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. (See id.)  It cannot be seriously disputed that the Tiffany Marks are strong, arbitrary and fanciful marks. (See Kristel Decl. ¶ 4; see also Tiffany Trademark Registrations, attached as Comp. Ex. 1 to the Complaint.)

The Tiffany Marks have also acquired secondary meaning. Tiffany has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Tiffany Marks. (Kristel Decl. ¶¶ 6-7.) The Tiffany Marks enjoy widespread recognition and are prominent in the minds of consumers. Indeed, the Tiffany Marks are among the most widely recognized trademarks in the United States for luxury goods. (Id.)

---

[8] Trademark Registration 5,176,498 is not incontestable.

### (2)    Similarity of the Marks.

Likelihood of confusion is greater when an infringer uses the exact trademark.  Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004).  Defendants are using marks that are identical to the Tiffany Marks. (Compare Tiffany's Trademark Registrations [Comp. Ex. 1 to the Compl.] with Defendants' Seller IDs and Subject Domain Name [Comp. Exs. 1 through 3 to the Rosaler Decl. and Comp. Exs. 1 through 4 to the Burns Decl.].)

### (3)    Similarity of the Goods.

"The greater the similarity between the products and services, the greater the likelihood of confusion." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983). Defendants are selling the same types of goods Tiffany sells. (Kristel Decl. ¶¶ 4-5; see generally Defendants' Seller IDs and Subject Domain Name [Comp. Exs. 1 through 3 to the Rosaler Decl. and Comp. Exs. 1 through 4 to the Burns Decl.].)  Because they bear counterfeits of the Tiffany Marks, Defendants' Goods appear virtually identical to Tiffany's genuine products in the consumer market.  Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983).

### (4)    Similarity of Sales Method and (5) Advertising Method.

Convergent marketing channels increase the likelihood of confusion. See Turner Greenberg Assocs., 320 F. Supp. 2d at 1332.  Both Tiffany and Defendants sell and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. (See Kristel Decl. ¶¶ 4-5; Rosaler Decl. ¶ 4; Burns Decl. ¶ 4.)  Thus, the conditions of purchase for both parties are unmistakably identical.  Moreover, both target the same general U.S. consumers, and as such, Tiffany is directly competing with Defendants' products.

### (6)    Defendants' Intent.

This district has held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d at 1333, citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999).  In a case of clear-cut copying, it is appropriate to infer Defendants intended to

benefit from Tiffany's reputation, to Tiffany's detriment. See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida, 546 F. Supp. 987, 996 (S.D. Fla. 1982).

(7)     **Evidence of Actual Confusion.**

Actual confusion is unnecessary to establish infringement since the test is likelihood of confusion.  See Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are advertising, offering to sell and selling counterfeit goods identical in appearance to those sold by Tiffany. (Kristel Decl. ¶¶ 4, 9-13; Rosaler Decl. ¶ 4 and Comp. Exs. 1 through 3 thereto; Burns Decl. ¶ 4 and Comp. Exs. 1 through 4 thereto.)  Even if buyers are told of the bogus nature of Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will obviously be confused, because they are viewing goods bearing the Tiffany Marks, which undeniably creates the impression they are viewing genuine goods sold or authorized by Tiffany.  Such post-sale confusion is entirely actionable.  See Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc., 706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused.").

The seven factors weigh only in Tiffany's favor. Tiffany has therefore shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

b)     **Likelihood of Success on False Designation of Origin Claim.**

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue.  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. at 780.  Whether the violation is called infringement, unfair competition, or false designation of origin, the test is identical – is there a "likelihood of confusion?" Id. Thus, because Tiffany has established the merits of its trademark counterfeiting and infringement claims against Defendants, a likelihood of success is also shown as to Tiffany's claim for false designation of origin.

c)     **Likelihood of Success on Common Law Unfair Competition Claim.**

Whether a defendant's use of a plaintiff's trademarks creates a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. See Planetary Motion, Inc. v.

12

Techsplosion, Inc., 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Tiffany has established there is a likelihood of confusion regarding Defendants' use of the Tiffany Marks on their counterfeit and infringing products. Accordingly, Tiffany is also likely to succeed on the merits of its common law unfair competition claim.

> ### d)  Likelihood of Success on Common Law Trademark Infringement Claim.

The analysis of liability for Florida common law trademark infringement is also the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act.  PetMed Express, Inc. v. MedPets.com, Inc., 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).  As discussed above, Tiffany has satisfied the three elements of its trademark counterfeiting and infringement claims against Defendants, establishing that a likelihood of confusion exists herein. Therefore, Tiffany is also likely to succeed on the merits of its common law trademark infringement claim.

> ### 2.  Tiffany is Suffering Irreparable Injury.

As the Eleventh Circuit expressed it: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998).  Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of the defendant's activities.  Id.  A likelihood of confusion exists herein because Defendants have engaged in counterfeiting and infringement activities using spurious designations indistinguishable from the Tiffany Marks.

> ### 3.  The Balance of Hardship Tips Sharply in Tiffany's Favor.

Tiffany has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Tiffany Marks.  (Kristel Decl. ¶¶ 6-8.)  Should Defendants be permitted to continue their trade in counterfeit goods, Tiffany will suffer substantial losses and damage to its reputation.  (See id. at ¶¶ 8, 17.)  However, Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued, because Defendants have no right to engage in their present counterfeiting and infringing activities.

### 4.     The Relief Sought Serves the Public Interest.

Defendants are engaged in illegal activities and are directly defrauding the consuming public by palming off Defendants' Goods as genuine goods of Tiffany.  The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. <u>See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.</u>, 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

### C.     The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### 1.     Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Tiffany's Trademarks is Appropriate.

Tiffany requests an order requiring Defendants to immediately cease all use of the Tiffany Marks, or substantially similar marks, including on or in connection with all e-commerce stores, photo albums, Internet websites, and domain names owned and operated, or controlled by them.  Such relief is necessary to stop the ongoing harm to Tiffany's trademarks and goodwill and to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of the Tiffany Marks. Many courts, including this Court, have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks.[9]

---

[9] <u>See, e.g.</u>, <u>Mycoskie, LLC v. 1688best</u>, Case No. 18-cv-60925-KMM (S.D. Fla. July 2, 2018) (Order granting <i>Ex Parte</i> Application for Temporary Restraining Order); <u>Cartier International, A.G. v. Replicapaneraiwatches.cn</u>, Case No. 17-cv-62401-KMM (S.D. Fla. Jan. 2, 2018) (same); <u>Goyard v. Agote</u>, Case No. 17-cv-62276-KMM (S.D. Fla. Dec. 28, 2017) (same); <u>Gucci America, Inc. v. idolbags.ru</u>, Case No. 17-cv-60790-KMM (S.D. Fla. June 21, 2017) (same); <u>Chanel, Inc. v. chanelbagsvk.com</u>, Case No. 16-cv-60969-KMM (S.D. Fla. May 6, 2016) (same); <u>Fendi Adele, S.r.l. v. alexander ott</u>, Case No. 16-cv-60618-KMM (S.D. Fla. March 24, 2016) (same); <u>Michael Kors, L.L.C. v. 2015bagcheapsale.com</u>, Case No. 16-cv-60023-KMM (S.D. Fla. Jan. 6, 2016) (same). <u>See also</u> <u>Mycoskie, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"</u>, No. 19-60518-CIV-BLOOM, 2019 U.S. Dist. LEXIS 79803 (S.D. Fla. March 1, 2019) (same); <u>Apple Corps v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"</u>, No. 19-60404-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 78863 (S.D. Fla. Feb. 19, 2019, docketed Feb. 20, 2019) (same); <u>adidas AG v. 1jerseys</u>, No. 18-63164-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 43046 (S.D. Fla. Jan. 2, 2019) (same); <u>Gucci Am., Inc. v. BGAADB</u>, No. 18-62227-CIV-UNGARO, 2018 U.S. Dist. LEXIS 222673 (S.D.

2.    **Entry of an Order Prohibiting Transfer of the Seller IDs and Subject Domain Name During the Pendency of this Action is Appropriate.**

To preserve the status quo, Tiffany seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller IDs and Subject Domain Name being used and controlled by Defendants to other parties. Once they become aware of litigation against them, Defendants operating online can easily, and often will, change the ownership or modify domain registration, e-commerce store, social media or image hosting accounts, and private messaging account data and content, change payment accounts, redirect consumer traffic to other seller identification names, private messaging accounts, and domain names, and transfer assets and the ownership rights to the Seller IDs and Subject Domain Name, and thereby thwart the Court's ability to grant meaningful relief. (Gigante Decl. ¶ 4.) Here, an interim order prohibiting Defendants from transferring their e-commerce stores, photo albums, and domain names operating under the Seller IDs and Subject Domain Name poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Tiffany full relief. Courts have granted this precise relief in this district and similar relief in actions where the relied upon instrumentalities of infringement and contact are e-commerce stores, photo albums, domain names and associated websites.[10]

---

Fla. Sept. 20, 2018, docketed Sept. 21, 2018) (same); Chanel, Inc. v. Aestheticase.com, No. 15-60846-CIV-COHN, 2015 U.S. Dist. LEXIS 180207 (S.D. Fla. Apr. 24, 2015) (same); Chanel, Inc. v. Curry, No. 15-60650-CIV-ROSENBERG, 2015 U.S. Dist. LEXIS 179689 (S.D. Fla. Apr. 16, 2015) (same).

[10] See e.g., Mycoskie, LLC v. 1688best, Case No. 18-cv-60925-KMM (S.D. Fla. July 2, 2018) (Order restraining the transfer of e-commerce stores during pendency of action or until further Order of the Court); Cartier International, A.G. v. Replicapaneraiwatches.cn, Case No. 17-cv-62401-KMM (S.D. Fla. Jan. 2, 2018) (prohibiting Defendants from transferring e-commerce stores and domain names during pendency of action or until further Order of the Court); Goyard v. Agote, Case No. 17-cv-62276-KMM (S.D. Fla. Dec. 28, 2017) (Order restraining the transfer of e-commerce stores during pendency of action or until further Order of the Court); Gucci America, Inc. v. idolbags.ru, Case No. 17-cv-60790-KMM (S.D. Fla. June 21, 2017) (prohibiting Defendants from transferring domain names during pendency of action or until further Order of the Court).  See also Mycoskie, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-cv-60518-BLOOM, 2019 U.S. Dist. LEXIS 79803 (S.D. Fla. March 1, 2019) (prohibiting Defendants from transferring e-commerce stores operating via marketplace platform during pendency of action or until further Order of the Court); Apple Corps v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-60404-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 78863 (S.D. Fla. Feb. 19, 2019, docketed Feb. 20, 2019) (same); adidas AG v. 1jerseys, No. 18-63164-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS

### 3. An *Ex Parte* Order Restraining Transfer of Assets is Appropriate.

In addition to an order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets.  Tiffany has demonstrated above that it will likely succeed on the merits of its claims. As such, under 15 U.S.C. § 1117, Tiffany will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme. 15 U.S.C. § 1117(a) (2018). Due to the deceptive nature of the counterfeiting business, and Defendants' deliberate violations of federal trademark laws, Tiffany respectfully requests this Court grant additional *ex parte* relief identifying payment accounts and restraining the transfer of all monies held or received by the Financial Entities, or other financial institutions, for the benefit of any one or more of the Defendants, and any other financial accounts tied thereto. (See Gigante Decl. ¶¶ 5-10.) See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc., 80 F.3d 749 (2d Cir. 1996); see also SEC v. ETS Payphones, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 144 L. Ed. 2d 319, 119 S. Ct. 1961 (1999). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets *pendente lite.* See Mason Tenders Dist. Council Pension Fund v. Messera, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all the Circuit Courts have held that Rule 65 is available to freeze assets *pendente lite* under some set of circumstances").

In light of the illicit nature of the counterfeiting business and the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of

---

43046 (S.D. Fla. Jan. 2, 2019) (same); Gucci Am., Inc. v. BGAADB, No. 18-cv-62227-UNGARO, 2018 U.S. Dist. LEXIS 222673 (S.D. Fla. Sept. 20, 2018, docketed Sept. 21, 2018) (same); Chanel, Inc. v. Aestheticase.com, No. 15-60846-CIV-COHN, 2015 U.S. Dist. LEXIS 180207 (S.D. Fla. Apr. 24, 2015) (same); Chanel, Inc. v. Curry, No. 15-60650-CIV-ROSENBERG, 2015 U.S. Dist. LEXIS 179689 (S.D. Fla. Apr. 16, 2015) (same).

such asset restraints in cases involving counterfeiting defendants. See, e.g. Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d 982 (11th Cir. 1995); Reebok Int'l Ltd. v. Marnatech Enter., 737 F. Supp. 1521 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th Cir. 1992). In Levi Strauss, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117. Levi Strauss, 51 F.3d at 987. Distinguishing Levi Strauss from two earlier cases not involving Lanham Act claims, the Court emphasized the necessity of the restraint holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." Id. citing Federal Trade Commission v. United States Oil and Gas Corp., 748 F.2d 1431, 1433-34 (11th Cir. 1984) (district court may exercise its full range of equitable powers, including a preliminary asset restraint, to ensure that permanent equitable relief will be possible). Indeed, courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested.  See S. E. C. v. Lauer, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (noting that there is no requirement for the restrained assets be traceable to the fraudulent activity underlying a lawsuit); Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); Kemp v. Peterson, 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity). In cases in this district substantially similar to this matter, this Court and others have entered the precise relief sought herein.[11]

---

[11] See e.g., Mycoskie, LLC v. 1688best, Case No. 18-cv-60925-KMM (S.D. Fla. July 2, 2018) (Order granting TRO, requiring financial institutions to identify defendants' payment accounts and to restrain the funds in those accounts to preserve assets to satisfy plaintiff's requested relief); Cartier International, A.G. v. Replicapaneraiwatches.cn, Case No. 17-cv-62401-KMM (S.D. Fla. Jan. 2, 2018) (same); Goyard v. Agote, Case No. 17-cv-62276-KMM (S.D. Fla. Dec. 28, 2017) (same); Fendi Adele, S.r.l. v. alexander ott, Case No. 16-cv-60618-KMM (S.D. Fla. March 24, 2016) (same). See also Mycoskie, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-cv-60518-BLOOM, 2019 U.S. Dist. LEXIS 79803 (S.D. Fla. March 1, 2019) (same); Apple Corps v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-60404-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 78863 (S.D. Fla. Feb. 19, 2019, docketed Feb. 20, 2019) (same); adidas AG v. 1jerseys, No. 18-63164-

Similarly, in Reebok v. Marnatech, the District Court granted Reebok a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. Reebok Int'l Ltd., 737 F. Supp. at 1526. In affirming the decision, the Ninth Circuit determined that the plaintiff met its burden of demonstrating: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. Reebok Int'l Ltd., 970 F.2d 552, 563 (9th Cir. 1992). Moreover the Court reasoned: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." Reebok Int'l Ltd., 970 F.2d. at 559; see also Republic of Philippines v. Marcos, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989) ("[a] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their assets under trademark infringement claims. See e.g., Levi Strauss, 51 F.3d at 987; Reebok Int'l Ltd., 970 F.2d at 559. Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued ex parte. See F.T. Int'l Ltd v. Mason, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting ex parte TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); CSC Holdings, Inc. v. Greenleaf Elec., Inc., 2000 WL 715601 (N.D. Ill. 2000) (granting ex parte TRO enjoining cable television pirates and restraining pirates' assets).

In this case, Defendants' blatant violations of federal trademark laws warrant an ex parte order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' businesses are

---

CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 43046 (S.D. Fla. Jan. 2, 2019) (same); Gucci Am., Inc. v. BGAADB, No. 18-cv-62227-UNGARO, 2018 U.S. Dist. LEXIS 222673 (S.D. Fla. Sept. 20, 2018, docketed Sept. 21, 2018) (same); Chanel, Inc. v. Aestheticase.com, No. 15-60846-CIV-COHN, 2015 U.S. Dist. LEXIS 180207 (S.D. Fla. Apr. 24, 2015) (same); Chanel, Inc. v. Curry, No. 15-60650-CIV-ROSENBERG, 2015 U.S. Dist. LEXIS 179689 (S.D. Fla. Apr. 16, 2015) (same).

conducted anonymously over the Internet, Tiffany has additional cause for *ex parte* relief, as Defendants may easily secret or transfer their assets without the Court's or Tiffany's knowledge.

        **D.    A Bond Should Secure the Injunction.**

Because of the strong and unequivocal nature of Tiffany's evidence of counterfeiting and infringement, Tiffany respectfully requests this Court require it to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

**IV.    <u>CONCLUSION</u>**

In view of the foregoing, Plaintiff, Tiffany (NJ) LLC, respectfully requests this Court grant its *Ex Parte* Application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Additionally, due to the time provisions of a temporary restraining order, in the event the application is granted, Tiffany respectfully requests the Court provide a copy of the temporary restraining order to Tiffany's counsel via e-mail at Stephen@smgpa.net so that Tiffany may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing date.

DATED: February 13, 2020.        Respectfully submitted,

                        STEPHEN M. GAFFIGAN, P.A.

                        By: **Stephen M. Gaffigan**
                        Stephen M. Gaffigan (Fla. Bar No. 025844)
                        Virgilio Gigante (Fla. Bar No. 082635)
                        T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
                        401 East Las Olas Blvd., Suite 130-453
                        Ft. Lauderdale, Florida 33301
                        Telephone: (954) 767-4819
                        E-mail: Stephen@smgpa.net
                        E-mail: Leo@smgpa.net
                        E-mail: Raquel@smgpa.net

                        Attorneys for Plaintiff, Tiffany (NJ) LLC

SCHEDULE "A"
## DEFENDANTS BY NUMBER, SELLER ID, SUBJECT DOMAIN NAME,
## PAYMENT ACCOUNTS AND MEANS OF CONTACT

| Def. No. | Defendant / Seller ID / Subject Domain Name | Store No. / Store URL | Financial Account / Payee | Infringing Product Number | Additional Means of Contact |
|---|---|---|---|---|---|
| 1 | GUOGUOSHENGYI BEANS Store | Store No. 4991400 | Aliexpress | 33019537250 | |
| 2 | sicily Store | Store No. 5478104 | Aliexpress | 4000453110366 | |
| 3 | Suri Store | Store No. 5484262 | Aliexpress | 4000468281890 | |
| 4 | Alex_alex | Store No. 21273789 | DHGATE | 482743591 | |
| 5 | Amazingjewelrystore | Store No. 20771635 | DHGATE | 408645294 | |
| 6 | aoostore | Store No. 21022336 | DHGATE | 415902014 | |
| 7 | beichongjewelry | Store No. 20325209 | DHGATE | 399872096 | |
| 8 | brose1 | Store No. 20198299 | DHGATE | 408795053 | |
| 9 | cocoluxury | Store No. 21242009 | DHGATE | 479186359 | |
| 10 | designer_a_lee | Store No. 21259949 | DHGATE | 458726030 | |
| 11 | dh__shopping02 | Store No. 21175412 | DHGATE | 468275856 | |
| 12 | dhgate_flash | Store No. 21187652 | DHGATE | 493123262 | |
| 13 | domesticcat | Store No. 21211044 | DHGATE | 501428144 | |
| 14 | emily_jewelry | Store No. 20783971 | DHGATE | 404596499 | |
| 15 | jewelry_farr | Store No. 21153428 | DHGATE | 478661325 | |
| 16 | Ligongda6 | Store No. 21211889 | DHGATE | 457171553 | |
| 17 | mickeybigmouse | Store No. 21175418 | DHGATE | 462651736 | |
| 18 | perfect_deal | Store No. 21332285 | DHGATE | 480536965 | |
| 19 | uppoint | Store No. 21159557 | DHGATE | 432527737 | |

| 20 | womanworldltd | Store No. 20106363 | DHGATE | 396139605 | |
|----|---------------|--------------------|--------|-----------|----|
| 21 | xinshiji6688 | Store No. 21194989 | DHGATE | 461033573 | |
| 22 | xixis | Store No. 21100617 | DHGATE | 475535251 | |
| 23 | yingwei9688 | Store No. 21285645 | DHGATE | 486569451 | |
| 24 | zj475633650 | Store No. 21043396 | DHGATE | 502304710 | |
| 25 | a8903 | Store No. 21224967 | DHGATE | 514951765 | |
| 26 | aa89650002 | Store No. 21155319 | DHGATE | 514948764 | |
| 27 | Acooll | Store No. 21016521 | DHGATE | 438902270 | |
| 28 | Ameis | Store No. 20776158 | DHGATE | 466435145 | |
| 29 | az2027 | Store No. 21200104 | DHGATE | 516012637 | |
| 30 | carla2 | Store No. 21169635 | DHGATE | 467681134 | |
| 31 | cc89650004 | Store No. 21156328 | DHGATE | 515859618 | |
| 32 | cgnfgnfdb | Store No. 21415215 | DHGATE | 515068205 | |
| 33 | Claire008 | Store No. 20929680 | DHGATE | 407830955 | |
| 34 | colorfuljewelry1 | Store No. 20766823 | DHGATE | 418559101 | |
| 35 | Cygj111 | Store No. 21091164 | DHGATE | 447754908 | |
| 36 | dodogogo | Store No. 21424032 | DHGATE | 512860570 | |
| 37 | Dunhang05 | Store No. 21037653 | DHGATE | 496944264 | pinkhenan@gmail.com |
| 38 | Enjoy_time | Store No. 20755081 | DHGATE | 494273163 | |
| 39 | Farr0118 | Store No. 21185013 | DHGATE | 446585498 | |
| 40 | Gg1125 | Store No. 21251954 | DHGATE | 514945848 | |
| 41 | go888store | Store No. 21200507 | DHGATE | 448320476 | |
| 42 | goodluckjewelry8 | Store No. 21388689 | DHGATE | 496862171 | |

| 43 | Goodsyiwu | Store No. 19956338 | DHGATE | 405095024 | |
|----|-----------|--------------------|--------|-----------|---|
| 44 | Goood4store | Store No. 21200508 | DHGATE | 494833899 | |
| 45 | hk2019008 | Store No. 21171599 | DHGATE | 465973508 | |
| 46 | Hot4u | Store No. 21200836 | DHGATE | 500978319 | |
| 47 | Jiangjiarong | Store No. 21284639 | DHGATE | 504097866 | |
| 48 | Junemay | Store No. 21016220 | DHGATE | 473809043 | |
| 49 | kewl333 | Store No. 21438422 | DHGATE | 519774143 | |
| 50 | lifengxia2020 | Store No. 21400194 | DHGATE | 514943132 | |
| 51 | Lovejeweley2017 | Store No. 21045080 | DHGATE | 413991415 | |
| 52 | lxh849880872 | Store No. 20972538 | DHGATE | 515853134 | |
| 53 | Mandyjewelry02 | Store No. 21059845 | DHGATE | 415841816 | |
| 53 | mandyjewelry.cn | | 286342755 @qq.com | | szpanmoer@ 163.com 15368967@ qq.com |
| 53 | 18038178719 | https://1803 8178719.x.y upoo.com/al bums/67355 195?uid=1 | 286342755 @qq.com | | WhatsApp: +86180 9891 2518 |
| 54 | nuokesasi | Store No. 21386404 | DHGATE | 513746830 | |
| 55 | qiye005 | Store No. 21410882 | DHGATE | 514928232 | |
| 56 | qiye006 | Store No. 21410784 | DHGATE | 516687118 | |
| 57 | qiye007 | Store No. 21410785 | DHGATE | 516676178 | |
| 58 | qiye008 | Store No. 21410884 | DHGATE | 516651806 | |
| 59 | uphot | Store No. 21159556 | DHGATE | 455820230 | |
| 60 | Ustore8 | Store No. 21200501 | DHGATE | 498880903 | |
| 61 | w0040 | Store No. | DHGATE | 516522143 | |

| | | 21432502 | | | |
|---|---|---|---|---|---|
| 62 | w0043 | Store No. 21433215 | DHGATE | 519516641 | |
| 63 | wanshihengtong | Store No. 21345787 | DHGATE | 503212299 | |
| 64 | xiaohongliang2020 | Store No. 21403359 | DHGATE | 514940799 | |
| 65 | Xiaopi1008 | Store No. 20368185 | DHGATE | 507189439 | |
| 66 | Xuancaijewellery | Store No. 20769535 | DHGATE | 444266140 | |
| 67 | yaoming_logo | Store No. 21239948 | DHGATE | 514946931 | |
| 68 | yijo | Store No. 21150842 | DHGATE | 472304485 | |
| 69 | z632529 | Store No. 21211678 | DHGATE | 488326316 | |
| 70 | Zj501288 | Store No. 20087400 | DHGATE | 466006841 | |
| 71 | Zzzstore | Store No. 21021916 | DHGATE | 429979062 | |
| 72 | sylvia77love | https://www.instagram.com/sylvia77love/ | 332164401@qq.com | B544ZaTJhxT | WhatsApp: +86 135 4448 9828 Email: sevenfantastic@hotmail.com |
| 73 | AD-Hanjin31 | 1513248244 727993520-207-3-709-1454639044 | Joom USA Inc | 5cc0376736b54 d0101644cb0 | |
| 74 | irene1 | 1506395754 306861932-16-3-709-2900369617 | Joom USA Inc | 5cb6e83036b54 d0101323fb3 | |
| 75 | One More Chance | 1520924756 461060907-148-3-709-3279504356 | Joom USA Inc | 5ac31f511436d 401aa48bb96 | |
| 76 | FASHION | https://wanelo.co/women_fashion | | | luxedaze@outlook.com |
| 76 | women_fashion | | Wanelo | 105184738 | |
| 77 | My Jersey Shop | https://wanelo.co/myjerseysshop | | | |
| 77 | myjerseysshop | | Wanelo | 76992782 | |

| 78 | Yiwu wholesale mall | 583294ce15 91451165f1 2d50 | PayPal * Wish | 5d4f86b5c3551 273df5ae86a | |