**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:20-cv-60299-KMM

TIFFANY (NJ) LLC,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

      Defendants.

_____/

**<u>SEALED ORDER</u>**

THIS CAUSE came before the Court upon Plaintiff Tiffany (NJ) LLC's ("Tiffany") *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("*Ex Parte* Appl.") (ECF No. 8).  Therein, Plaintiff requests an order restraining Defendants' transfer of assets, a temporary restraining order, and a preliminary injunction against Defendants upon expiration of the TRO.  *Id.* at 1.

**I.    BACKGROUND**[1]

Plaintiff is the registered owner of numerous trademarks used in connection with the manufacture and distribution of high-quality luxury products. Among these trademarks are trademarks associated with Trademark No. 0,023,573, registered on September 5, 1893; Trademark No. 0,133,063, registered on July 6, 1920; Trademark No. 1,228,189, registered on February 22, 1983; Trademark No. 1,228,409, registered on February 22, 1983; Trademark No. 1,669,365, registered on December 24, 1991; Trademark No. 2,359,351, registered on June 20, 2000; Trademark No. 2,416,795, registered on January 2, 2001; and Trademark No. 5,176,498,

_____

[1]  The facts herein are taken from Plaintiff's Complaint (ECF No. 1) and Plaintiff's *Ex Parte* Application.

registered on April 1, 2017 (collectively, the "Tiffany Trademarks").  *See* Certificates of Registration of the Trademarks (ECF No. 1–2).  Defendants are unknown individuals, partnerships or unincorporated associations who are believed to use, or assist others in using, Internet based e-commerce stores, photo albums, and a commercial Internet website operating under the seller identification names ("Seller IDs") and domain names ("Subject Domain Names") as set forth on Schedule A of this Order.[2]

Plaintiff alleges that Defendants, despite their known lack of authority, are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their respective Seller IDs and Subject Domain Names, goods bearing and/or using counterfeit and infringing trademarks that are exact copies of the Tiffany Trademarks, without authorization.  Decl. of Brian Kristel ("Kristel Decl.") (ECF No. 8–1) ¶ 9; Decl. of Virgilio Gigante ("Gigante Decl.") (ECF No. 8–2) ¶ 2; Decl. of Kathleen Burns ("Burns Decl.") (ECF No. 8–7) ¶ 4.  Defendants allegedly accomplish this through the operation of Internet based e-commerce stores operating under the Seller IDs and Subject Domain Names.  In response to Defendants' alleged trademark infringement, Plaintiff retained AED Investigations, Inc. ("AED") and Invisible Inc., licensed private investigative firms, to investigate the promotion and sale of counterfeit versions of Plaintiff's products by Defendants and to determine Defendants' payment account data for receipt of funds paid for sale of counterfeit versions of Tiffany's branded merchandise through the Seller IDs and Subject Domain Names.  Kristel Decl. ¶ 10; Decl. of Eric Rosaler ("Rosaler Decl") (ECF No. 8–3) ¶ 4.

AED and Invisible Inc. collectively accessed the e-commerce stores and photo albums operating under Defendants' Seller IDs and the websites operating under Defendants' Subject

---

[2]  The complete list of e-commerce stores includes seventy-eight Seller IDs.  For a complete list, *see* Schedule A of this Order.

Domain Names.  Rosaler Decl. ¶ 4; Burns Decl. ¶ 4.  AED and Invisible Inc. placed orders for the purchase of various alleged counterfeit products from each of those Defendants.  *See* Burns Decl. at ¶ 4.  Each purchase was processed entirely online.  Rosaler Decl. ¶ 4.  AED and Invisible Inc. finalized payment for the various products ordered from Defendants via Defendants' respective payment accounts and/or payee as identified on Schedule A of this Order.  Kathleen Burns captured and downloaded the detailed webpages, reflecting the Tiffany branded products purchased via Defendants' Seller IDs operating through Defendants' Subject Domain Names, together with photographs of many of the products received, were sent to Tiffany's representative, Brian Kristel ("Kristel"), for inspection.  *See id.*; Burns Decl. ¶ 4; Kristel Decl. ¶ 11.  Kristel, Plaintiff's Director of Investigations and Trademark Enforcement Americas, is able to identify the distinctions between genuine Tiffany branded merchandise and counterfeit copies of the same.  Kristel Decl. ¶ 3.  Based on a visual inspection of the detailed web page captures reflecting the Tiffany branded products, together with photographs of certain received goods, Kristel's personal knowledge that Plaintiff does not conduct business with Defendants and the fact that Defendants were selling the items far below the prices of similar genuine products of Plaintiffs, Kristel concluded that Defendants' products are non-genuine, unauthorized Tiffany branded products.  *See id.* ¶¶ 11–13.

## II.     LEGAL STANDARD

A Court may issue a TRO without notice to the adverse party if the Plaintiff shows that:

> (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (2) the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required.

3

Fed. R. Civ. P. 65(b).  "An *ex parte* restraining order is an extreme remedy only to be used with the utmost caution."  *Levine v. Comcoa, Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995) (Hill, J. concurring).

Once the moving party meets the threshold requirements of Rule 65(b) to secure an *ex parte* temporary restraining order, Plaintiff must demonstrate (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest in order to obtain injunctive relief.  *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

## III.   DISCUSSION

### A. *Ex Parte* TRO

Here, Plaintiff has met the threshold requirements to seek a TRO on an *ex parte* basis. First, it clearly appears from the detailed affidavits that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.  Given the ease with which Defendants may transfer and/or redirect commercial activity from one e-commerce store to another, change payment accounts and transfer assets and the registrations for many of the Internet based e-commerce stores, there is good cause to believe that if Plaintiff provides notice to Defendants on Plaintiff's *Ex Parte* Application, Plaintiff's ability to obtain meaningful relief will be thwarted.  *See* Gigante Decl. ¶ 4.  Specifically, notice would thwart Plaintiff's ability to obtain meaningful relief because Defendants have the ability to change the ownership or modify domain registration, e-commerce store, photo album, and private messaging account data and content, change payment accounts, redirect consumer traffic to other

4

seller identification names, private messaging accounts, and websites, and transfer assets and ownership of the Seller IDs and Subject Domain Name. *Id*. Such modifications can happen in a short period of time after Defendants are provided with notice of this action. *Id*. Defendants can also easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for Temporary Restraining Order, thereby thwarting the Court's ability to grant meaningful relief and completely erasing the status quo. *Id*. Second, counsel has certified in writing why notice should not be required. *Ex Parte* Appl. at 8–9.

Moreover, Plaintiff has demonstrated that a TRO is warranted. First, Plaintiff has demonstrated a substantial likelihood of success on the merits. In order to prevail on a claim for trademark infringement Plaintiff must show that: (1) ownership of the Tiffany's Trademarks; (2) Defendants' use of the Tiffany's Trademarks is without authorization; and (3) that Defendant's use of the Tiffany's Trademarks is likely to cause confusion, mistake or deception. *See* 15 U.S.C. § 1114(1); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983).

First, Plaintiff has shown ownership of the Tiffany's Trademarks because Plaintiff has attached the Certificates of Registration of the Trademarks to the Complaint. *See* Certificates of Registration of the Trademarks. Second, Tiffany's representative, Kastel, avers based on personal knowledge that Defendants do not have authorization to use the Tiffany's Trademarks. Kastel Decl. ¶¶ 9, 12. Third, Plaintiff's application and the declaration of Tiffany's Representative, Kastel, demonstrate that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of products bearing counterfeits, reproductions, and/or colorable imitations of the Tiffany Trademarks, and that the products Defendants are selling and promoting are copies of Plaintiff's products that bear copies of the Tiffany's Trademarks. Kastel Decl. ¶¶ 10–13.

Second, Plaintiff has demonstrated that Plaintiff is likely to suffer immediate and irreparable injury if a TRO is not granted. "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x, 180, 191 (11th Cir. 2005) (citation omitted). It is reasonable to infer, based on the evidence that Plaintiff has presented, that there is a strong showing of likelihood of confusion caused by Defendants trademark infringement. Specifically, Defendants are advertising, offering to sell and selling counterfeit goods identical in appearance to those sold by Tiffany, including bearing the Tiffany Trademark. Kristel Decl. ¶ 9; Gigante Decl. ¶ 2; Burns Decl. ¶ 4. As such, it is there is a sufficiently strong showing that consumers may believe they are viewing or purchasing genuine goods sold or authorized by Tiffany. Moreover, there is good cause to believe that consumers may be misled, confused, and disappointed by the quality of these products and that Plaintiff may suffer reputational harm as a result of the defendants activities.

Third, Plaintiff has demonstrated that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party. Plaintiff has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Tiffany Trademarks. Kristel Decl. ¶¶ 6–7. Defendants will suffer no legitimate hardship because Defendants have no right to engage in the present activities. Therefore, the potential harm to Plaintiff's reputation and goodwill as a manufacturer of high-quality products outweighs any potential harm to Defendants in restraining their trade of these counterfeit goods.

Fourth, the public interest favors issuance of the TRO. Specifically, it is in the public interest to protect consumers from being defrauded by the selling of counterfeit products, which

Defendants promote as genuine products of Plaintiff.  *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 1:16-cv-20683, 2017 WL 2895921, at \*9 (S.D. Fla. Apr. 13, 2017) (citation omitted).

### B.  <u>Transfer of Assets</u>

Additionally, Plaintiff requests the Court enter an order temporarily limiting the transfer of Defendants' unlawfully gained assets.  *Ex Parte* Appl. at 16.  Specifically, Plaintiff requests that the Court enter an order restraining the transfer of all monies transmitted through AliPay, Worldpay, PayPal, ContextLogic, and the DHgate.com, Joom.com, and Wanelo.co platforms, or any other financial institutions, for the benefit of any one or more of the Defendants, and any other financial accounts tied thereto.  *Id.*

Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of products bearing counterfeits and infringements of the Tiffany Trademarks.  *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (citation omitted).  Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset restraint, in order to assure the availability of permanent relief."  *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citation omitted).  Moreover, asset restraints can be particularly important where counterfeiters conduct their business entirely online and may be practically able to thwart adequate relief by transferring assets out of the reach of the plaintiff.  Therefore, there is good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV.   CONCLUSION

UPON CONSIDERATION of the *Ex Parte* Application, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND

ADJUDGED that Plaintiff's Motion for *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (ECF No. 8) is GRANTED. It is further ORDERED AND ADJUDGED that

1. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order are hereby temporarily restrained:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Tiffany Trademarks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Tiffany Trademarks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Tiffany Trademarks, or any confusingly similar trademarks.

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue the use of the Tiffany Trademarks or any confusingly similar trademarks, on or in connection with all Internet based e-commerce stores, photo albums, and the commercial Internet website businesses owned, operated, or controlled by them including the Internet based e-commerce stores operating under the Seller IDs and Subject Domain Names;

3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Tiffany Trademarks, or any confusingly similar trademarks within metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet based e-commerce store website businesses registered by, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs and Subject Domain Names;

4. Each Defendant shall not transfer ownership of the Internet based e-commerce store website businesses under their Seller IDs and Subject Domain Names during the pendency of this Action, or until further order of the Court;

5. Each Defendant shall preserve copies of all computer files relating to the use of any of the Internet based e-commerce store website businesses under their Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Internet based e-commerce stores under their Seller IDs that may have been deleted before the entry of this Order;

6. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China)

Internet Technology Co. Ltd. and Alipay.com Co., Ltd. (collectively, "Alipay"), Worldpay US, Inc. ("Worldpay"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, SIA Joom, which operates the Joom.com platform ("Joom"), PayPal, Inc. ("PayPal"), Wanelo.co ("Wanelo"), Stripe, Inc. ("Stripe"), and ContextLogic, Inc., which operates the Wish.com website ("ContextLogic") and their related companies and affiliates shall (i) immediately identify and restrain all funds in all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores, photo albums, and Internet website operating under the Seller IDs and Subject Domain Name, the store URLs, store numbers, and/or the e-mail addresses identified on Schedule A hereto, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, AliExpress, Ant Financial Services, Alipay, Worldpay, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, Joom, PayPal, Wanelo, Stripe, and ContextLogic, and their related companies and affiliates, shall further,

within five business days of receiving notice of this Order, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until after those accounts are restrained.  No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Worldpay, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, Joom, PayPal, Wanelo, Stripe, and ContextLogic, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

8. This TRO shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction, or until such further dates as set by the Court or stipulated to by the parties, but under no circumstances shall this TRO remain in effect for more than fourteen (14) days from the date of this Order;

9. This TRO shall apply to the Seller IDs and Subject Domain Name, associated ecommerce stores, photo albums, and website, and any other seller identification names, e-commerce stores, photo albums, private messaging accounts, domain names and websites, or financial accounts which are being used by Defendants for the

11

purpose of counterfeiting the Tiffany Marks at issue in this action and/or unfairly competing with Plaintiff; Defendant or any financial institution account holder subject to this TRO may petition the Court to modify the asset restraint set out herein;

10. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Fed. R. Civ. P. 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.  In the Court's discretion, the bond may be subject to increase should the amount of funds seized exceed $10,000.00;

11.  Pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the above-captioned Cause is referred to United States Magistrate Judge Lurana S. Snow to take all necessary and proper action as required by law with respect to Plaintiff's request for a preliminary injunction (ECF No. 8).

12. The Plaintiff is instructed to schedule a hearing before the Honorable United States Magistrate Judge Lurana S. Snow, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction.  This hearing shall be scheduled expeditiously and set for a time that accounts for the TRO's fourteen-day lifespan;

13. After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve copies of the Summons, Complaint, the Application for Temporary Restraining Order, and this Order on each Defendant via e-mail by providing the address to Plaintiff's designated

serving notice website to Defendants via the e-mail accounts provided by that Defendant (i) as part of the data related to its e-commerce store, photo album, or domain name, including customer service e-mail addresses, and onsite contact forms, or (ii) via the e-commerce marketplace platforms, social media websites, or image hosting website e-mail for their respective ecommerce stores and photo albums, including private messaging applications and/or services, or via the registrar of record for their respective domain names and via publication by posting a copy of the same on the website available at http://servingnotice.com/TfX6wk/index.html; and

14. Any response or opposition to Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel by forty-eight (48) hours prior to the hearing and filed with the Court, along with Proof of Service. The above dates may be revised upon stipulation by all parties and approval of the Court. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Fed. R. Civ. P. 65, and this Court's inherent authority.

DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of April, 2020.

K. MICHAEL MOORE
UNITED STATES CHIEF DISTRICT JUDGE

c:     All counsel of record

13

## SCHEDULE "A"

### DEFENDANTS BY NUMBER, SELLER ID, SUBJECT DOMAIN NAME, PAYMENT ACCOUNTS, AND MEANS OF CONTACT

| Def. No. | Defendant / Seller ID / Subject Domain Name | Store No. / Store URL | Financial Account / Payee | Infringing Product Number | Additional Means of Contact |
|---|---|---|---|---|---|
| 1 | GUOGUOSHENGYI BEANS Store | Store No. 4991400 | Aliexpress | 33019537250 | |
| 2 | sicily Store | Store No. 5478104 | Aliexpress | 4000453110366 | |
| 3 | Suri Store | Store No. 5484262 | Aliexpress | 4000468281890 | |
| 4 | Alex_alex | Store No. 21273789 | DHGATE | 482743591 | |
| 5 | Amazingjewelrystore | Store No. 20771635 | DHGATE | 408645294 | |
| 6 | aoostore | Store No. 21022336 | DHGATE | 415902014 | |
| 7 | beichongjewelry | Store No. 20325209 | DHGATE | 399872096 | |
| 8 | brose1 | Store No. 20198299 | DHGATE | 408795053 | |
| 9 | cocoluxury | Store No. 21242009 | DHGATE | 479186359 | |
| 10 | designer_a_lee | Store No. 21259949 | DHGATE | 458726030 | |
| 11 | dh_shopping02 | Store No. 21175412 | DHGATE | 468275856 | |
| 12 | dhgate_flash | Store No. 21187652 | DHGATE | 493123262 | |
| 13 | domesticcat | Store No. 21211044 | DHGATE | 501428144 | |
| 14 | emily_jewelry | Store No. 20783971 | DHGATE | 404596499 | |
| 15 | jewelry_farr | Store No. 21153428 | DHGATE | 478661325 | |
| 16 | Ligongda6 | Store No. 21211889 | DHGATE | 457171553 | |
| 17 | mickeybigmouse | Store No. 21153428 | DHGATE | 462651736 | |

14

| 18 | perfect_deal | Store No. 21332285 | DHGATE | 480536965 | |
| 19 | uppoint | Store No. 21159557 | DHGATE | 432527737 | |
| 20 | womanworldltd | Store No. 20106363 | DHGATE | 396139605 | |
| 21 | xinshiji6688 | Store No. 21194989 | DHGATE | 461033573 | |
| 22 | xixis | Store No. 21100617 | DHGATE | 475535251 | |
| 23 | yingwei9688 | Store No. 21285645 | DHGATE | 486569451 | |
| 24 | zj475633650 | Store No. 21043396 | DHGATE | 502304710 | |
| 25 | a8903 | Store No. 21224967 | DHGATE | 514951765 | |
| 26 | aa89650002 | Store No. 21155319 | DHGATE | 514948764 | |
| 27 | Acooll | Store No. 21016521 | DHGATE | 438902270 | |
| 28 | Ameis | Store No. 20776158 | DHGATE | 466435145 | |
| 29 | az2027 | Store No. 21200104 | DHGATE | 516012637 | |
| 30 | carla2 | Store No. 21169635 | DHGATE | 467681134 | |
| 31 | cc89650004 | Store No. 21156328 | DHGATE | 515859618 | |
| 32 | cgnfgnfdb | Store No. 21415215 | DHGATE | 515068205 | |
| 33 | Claire008 | Store No. 20929680 | DHGATE | 407830955 | |
| 34 | colorfuljewelry1 | Store No. 20766823 | DHGATE | 418559101 | |
| 35 | Cygj111 | Store No. 21091164 | DHGATE | 447754908 | |
| 36 | dodogogo | Store No. 21424032 | DHGATE | 512860570 | |
| 37 | Dunhang05 | Store No. 21037653 | DHGATE | 496944264 | pinkhenan@gmail.com |
| 38 | Enjoy_time | Store No. 20755081 | DHGATE | 494273163 | |
| 39 | Farr0118 | Store No. 21185013 | DHGATE | 446585498 | |

| | | | | | |
|---|---|---|---|---|---|
| 40 | Gg1125 | Store No. 21251954 | DHGATE | 514945848 | |
| 41 | go888store | Store No. 21200507 | DHGATE | 448320476 | |
| 42 | goodluckjewelry8 | Store No. 21388689 | DHGATE | 496862171 | |
| 43 | Goodsyiwu | Store No. 19956338 | DHGATE | 405095024 | |
| 44 | Goood4store | Store No. 21200508 | DHGATE | 494833899 | |
| 45 | hk2019008 | Store No. 21171599 | DHGATE | 465973508 | |
| 46 | Hot4u | Store No. 21200836 | DHGATE | 500978319 | |
| 47 | Jiangjiarong | Store No. 21284639 | DHGATE | 504097866 | |
| 48 | Junemay | Store No. 21016220 | DHGATE | 473809043 | |
| 49 | kewl333 | Store No. 21438422 | DHGATE | 519774143 | |
| 50 | lifengxia2020 | Store No. 21400194 | DHGATE | 514943132 | |
| 51 | Lovejeweley2017 | Store No. 21045080 | DHGATE | 413991415 | |
| 52 | lxh849880872 | Store No. 20972538 | DHGATE | 515853134 | |
| 53 | Mandyjewelry02 | Store No. 21059845 | DHGATE | | |
| 53 | mandyjewelry.cn | | 286342755@qq.com | | szpanmoer@163.com 15368967@qq.com |
| 53 | 18038178719 | https://18038178719.x.yupoo.com/albums/67355195?uid=1 | 286342755@qq.com | | WhatsApp: +86180 9891 2518 |
| 54 | nuokesasi | Store No. 21386404 | DHGATE | 513746830 | |
| 55 | qiye005 | Store No. 21410882 | DHGATE | 514928232 | |
| 56 | qiye006 | Store No. 21410784 | DHGATE | 516687118 | |
| 57 | qiye007 | Store No. 21410785 | DHGATE | 516676178 | |

| 58 | qiye008 | Store No. 21410884 | DHGATE | 516651806 | |
| 59 | uphot | Store No. 21159556 | DHGATE | 455820230 | |
| 60 | Ustore8 | Store No. 21200501 | DHGATE | 498880903 | |
| 61 | w0040 | Store No. 21432502 | DHGATE | 516522143 | |
| 62 | w0043 | Store No. 21433215 | DHGATE | 519516641 | |
| 63 | wanshihengtong | Store No. 21345787 | DHGATE | 503212299 | |
| 64 | xiaohongliang2020 | Store No. 21403359 | DHGATE | 514940799 | |
| 65 | Xiaopi1008 | Store No. 20368185 | DHGATE | 507189439 | |
| 66 | Xuancaijewellery | Store No. 20769535 | DHGATE | 444266140 | |
| 67 | yaoming_logo | Store No. 21239948 | DHGATE | 514946931 | |
| 68 | yijo | Store No. 21150842 | DHGATE | 472304485 | |
| 69 | z632529 | Store No. 21211678 | DHGATE | 488326316 | |
| 70 | Zj501288 | Store No. 20087400 | DHGATE | 466006841 | |
| 71 | Zzzstore | Store No. 21021916 | DHGATE | 429979062 | |
| 72 | sylvia77love | https://www.instagram.com/sylvia77love/ | 332164401@qq.com | B544ZaTJhxT | WhatsApp: +86 135 4448 9828 Email: sevenfantastic@hotmail.com |
| 73 | AD-Hanjin31 | 1513248244727993520-207-3-709-1454639044 | Joom USA Inc | 5cc0376736b54d0101644cb0 | |
| 74 | irene1 | 1506395754306861932-16-3-709-2900369617 | Joom USA Inc | 5cb6e83036b54d0101323fb3 | |
| 75 | One More Chance | 1520924756461060907- | Joom USA Inc | 5ac31f511436d401aa48bb96 | |

17

| | | 148-3-709-3279504356 | | | |
|---|---|---|---|---|---|
| 76 | FASHION | https://wanelo.co/women_fashion | Wanelo | 105184738 | luxedaze@outlook.com |
| | women_fashion | | | | |
| 77 | My Jersey Shop | https://wanelo.co/myjerseysshop | Wanelo | 76992782 | |
| | myjerseysshop | | | | |
| 78 | Yiwu wholesale mall | 583294ce1591451165f12d50 | PayPal * Wish | 5d4f86b5c3551273df5ae86a | |