## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 0:20-cv-60299-KMM

TIFFANY (NJ) LLC,

     Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A",

     Defendants.

_____/

## DEFAULT JUDGMENT ORDER

THIS CAUSE came before the Court upon Plaintiff Tiffany (NJ) LLC's ("Plaintiff")
Motion for Entry of Final Default Judgment Against the Individuals, Partnerships, and
Unincorporated Associations identified on Schedule "A" hereto (collectively, "Defendants").
("Mot.") (ECF No. 53).  Defendants did not file a response to the Motion and the time to do so has
passed.   The Motion is now ripe for review.

## I.    BACKGROUND

### A.    Factual Background

This is an action for federal trademark counterfeiting and infringement, false designation
of origin, common law unfair competition, and common law trademark infringement pursuant to
15 U.S.C. §§ 1114, 1116, and 1125(a), and The All Writs Act, 28 U.S.C. § 1651(a).  ("Am.
Compl.") (ECF No. 17) ¶ 1.  Plaintiff is a limited liability company that operates boutiques
throughout the world and is, in part, engaged in the business of manufacturing and distributing a
variety of high-quality luxury goods under multiple world-famous common law and federally
registered trademarks.  *Id.* ¶ 4.  Defendants are individuals and/or business entities who are the

past and present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Plaintiff's trademarks.  *Id.* ¶¶ 7, 10.

Tiffany is the owner of all rights in and to the following trademarks (collectively "Tiffany Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| TIFFANY & CO | 0,023,573 | September 5, 1893 | IC 14 – Jewelry and Watches. |
| TIFFANY | 0,133,063 | July 6, 1920 | IC 14 – Jewelry for Personal Wear, Not Including Watches; and Flat and Hollow Ware Made of or Plated with Precious Metal. |
| TIFFANY & CO. | 1,228,189 | February 22, 1983 | IC 14 – Decorative Art Objects Made in Whole or in Part of Precious or Semi- Precious Metals-Namely, Figurines, Boxes, Bowls, Trays, and Flowers, Jewelry, Metal Wares Made in Whole or in Part of Precious or Semi-Precious Metals-Namely, Business Card Cases, Candelabras, Candlesticks, Cigar and Cigarette Boxes, Napkin Rings, and Bookmarks, Semi-Precious Stones, Natural and Cultured Pearls. |
| TIFFANY | 1,228,409 | February 22, 1983 | IC 14 – Decorative Art Objects Made in Whole or in Part of Precious or Semi- Precious Metals-Namely, Figurines, Boxes, Bowls, Trays, Jewelry, Semi- Precious Stones, and Natural and Cultured Pearls. |
| T & CO. | 1,669,365 | December 24, 1991 | IC 14 – All Types of Jewelry Made of, or in Part of, Precious Metals and/or with Precious or Semi-Precious Stones. |
|  | 2,359,351 | June 20, 2000 | IC 14 – Jewelry; Watches. IC 21 – Decorative Boxes. |

| | | | |
|---|---|---|---|
|  | 2,416,795 | January 2, 2001 | IC 14 – Jewelry; watches and clocks; precious and semi-precious stones; decorative art objects made in whole or in part of precious metals and their alloys, namely, figurines, boxes and trophies; natural and cultured pearls; metal wares made in whole or in part of precious metals, and their alloys, namely, candelabras, candlesticks, cigar and cigarette boxes and ashtrays; bowls, serving trays, tumblers, pitchers, corkscrews, cups, porringers, and perfume flasks sold empty, all made in whole or in part of precious metals and their alloys; bar accessories made of precious metals and their alloys, namely, coasters; clothing accessories made of precious metals and their alloys, namely, money clips, cufflinks, key rings, collar stays, tie bars, tie tacks, belt buckles, and shirt studs; pill boxes made of or plated with precious metals and their alloys; golf clubs, and place markers for golf balls made in whole or in part of precious metals and their alloys; picture, calendar and photograph frames made in whole or in part of precious metals and their alloys |
|  | 5,176,498 | April 4, 2017 | IC 14 – Jewelry |

*Id.* ¶ 16.  The Tiffany Marks have been used in interstate commerce to identify and distinguish Tiffany's high-quality luxury goods for an extended period of time.  *Id.* ¶ 17.  The Tiffany Marks are symbols of Tiffany's quality, reputation and goodwill and have never been abandoned.  *Id.* ¶ 18.

3

Plaintiff has never assigned or licensed the Tiffany Marks to any of the Defendants. *Id.* ¶ 23. Nonetheless, Defendants are promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce using and bearing counterfeit and infringing trademarks that are exact copies of the Tiffany Marks (the "Counterfeit Goods") through at least the Internet based e-commerce stores, photo albums, and an interactive commercial Internet website operating under the Seller IDs and Subject Domain Name. *Id.* ¶ 25. Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Tiffany's genuine goods. *Id.* ¶ 26. Accordingly, Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. *Id.* ¶ 33. Moreover, Defendants' conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Tiffany's genuine goods and Defendants' Counterfeit Goods, which there is not. *Id.* Defendants are engaging in the counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Tiffany's rights for the purpose of trading on Tiffany's goodwill and reputation. *Id.* ¶ 32.

## B.   Procedural Background

On February 12, 2020, Plaintiff filed a complaint. (ECF No. 1). On February 13, 2020, Plaintiff filed an *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets and Memorandum of Law in Support Thereof, (ECF No. 8), and an *Ex Parte* Motion for Order Authorizing Alternate Service of Process of Defendants, (ECF No. 9). On April 15, 2020, the Court granted the *Ex Parte* Motion for Order Authorizing Alternate Services of Process of Defendants, authorizing Plaintiff to serve the Summonses, Complaint, and all future filings in this matter upon Defendants via electronic mail

("e-mail") and via Plaintiff's designated serving notice website by posting copies of the same on the Internet website appearing at the URL http://servingnotice.com/TfX6wk/index.html.  (ECF No. 11).  On April 17, 2020, the Court entered an Order granting Plaintiff's request for a temporary restraining order, *see* (ECF No. 12), and subsequently converted the temporary restraining order into a preliminary injunction on May 16, 2020, *see* (ECF No. 41).

On April 28, 2020, Plaintiff filed the Amended Complaint, alleging claims for (1) trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act, 15 U.S.C. § 1114 ("Count I"); (2) false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("Count II"); common law unfair competition ("Count III"); and common law trademark infringement ("Count IV").  *See* Am. Compl. ¶¶ 39–63.  Pursuant to the Court's Order granting Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate Service of Process of Defendants, Plaintiff served Defendants with their respective Summonses and a copy of the Amended Complaint on April 28, 2020.  (ECF No. 27).

As of the date of this Order, Defendants have failed to respond to the Amended Complaint. On May 20, 2020 and June 9, 2020, Plaintiff filed its Requests for Clerk's Entry of Default as to Defendants, (ECF Nos. 46, 50), and the Clerk of the Court entered default against Defendants, (ECF Nos. 47, 51).  Now, Plaintiff moves the Court to grant Final Default Judgment against Defendants.  *See* Mot.

## II.   LEGAL STANDARD

A court may enter default judgment against a defendant pursuant to Federal Rule of Civil Procedure 55(b)(2).   "The mere entry of a default by the Clerk of the Court does not in itself warrant the entry of a default judgment by the Court."  *Garrido v. Linden Contracting Servs.*, No. 0:14-cv-60469-KMM, 2014 WL 12603170, at *1 (S.D. Fla. Aug. 21, 2014).  "Rather, the Court

must find that there is a sufficient basis in the pleadings for the judgment to be entered." *Id.* (citation omitted). "A party in default has admitted all well-pleaded allegations of fact." *Id.* (citation omitted).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citations omitted). Damages may be awarded without an evidentiary hearing "only if the record adequately reflects the basis for award via . . . a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement against Racism & Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (citations and internal quotation marks omitted). In other words, a court may award damages "as long as the record contains evidence allowing the court to ascertain damages from 'mathematical calculations' and 'detailed affidavits.'" *Holtz v. Bagel Mkt., Inc.*, No. 12-62040-CIV-ROSENBAUM, 2013 WL 12141515, at *2 (S.D. Fla. Apr. 29, 2013) (quoting *Adolph*, 777 F.2d at 1543–44).

## III.   DISCUSSION

### A.   <u>Liability</u>

As a result of their default, Defendants concede that they violated Plaintiff's federally-registered trademarks and the Court finds them liable for (1) trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act (Count I); (2) false designation of origin pursuant to § 43(a) of the Lanham Act (Count II); common law unfair competition (Count III); and common law trademark infringement (Count IV). The Court first provides the legal standard for each Count, and then discusses whether Plaintiff establishes Defendants' liability.

      1.     *Counts I & IV: Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act, and Common Law Trademark Infringement Legal Standard*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." § 1114(1)(a). In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, a plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)). The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act. *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003).

      2.     *Count II: False Designation of Origin Pursuant to § 43(a) of the Lanham Act Legal Standard*

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, a plaintiff must prove that the defendant used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, that is likely to deceive as to the affiliation, connection, or association of the defendant with the plaintiff, or as to the origin, sponsorship, or approval, of the defendant's goods by the plaintiff. 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under § 1125(a) is the same as for a trademark counterfeiting and infringement claim—*i.e.,* whether the

public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

### 3. Count III: Common Law Unfair Competition Legal Standard

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83–8381–Civ–Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)."); *see also Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

### 4. Plaintiff Has Established Defendants' Liability as to All Counts

Plaintiff has established Defendants' liability as to all four Counts. Plaintiff used the Tiffany Marks "extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of [Plaintiff's] merchandise." Am. Compl. ¶ 25. Further, "Defendants are promoting and advertising, distributing, selling, and/or offering for sale goods . . . using and bearing counterfeit and infringing trademarks that are exact copies of the Tiffany Marks . . . through at least the Internet based e-commerce stores, photo albums, and a (sic) interactive commercial Internet website operating under the Seller IDs and Subject Domain Name" without Plaintiff's consent or authorization. *Id.* ¶¶ 25, 31. As a result, Defendants' activities "are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase." *Id.* ¶ 33. Moreover, Defendants' . . . conduct is likely to create a false

impression and deceive customers, the public, and the trade into believing there is a connection or association between Tiffany's genuine goods and Defendants' Counterfeit Goods[.]" *Id.* Accordingly, Plaintiff has satisfied the elements and established Defendants' liability for trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act; false designation of origin pursuant to § 43(a) of the Lanham Act; common law unfair competition; and common law trademark infringement. *See also id.* ¶¶ 7–15, 25–34, 40–43, 47–51, 55–57, 60–62.

### B.   Damages

Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Amended Complaint.[1] *See* Mot. at 15.  Specifically, Plaintiff requests statutory damages in the amount of $1,000,000.00 against each Defendant.  Mot. at 17.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good.  § 1117(c)(1).  In addition, if the Court finds that the defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good.  § 1117(c)(2).

The Court has wide discretion to determine the amount of statutory damages. *Petmed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004) (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)).  An

---

[1] The Amended Complaint also sets forth causes of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II), common law of unfair competition (Count III), and common law trademark infringement (Count IV).  As to Counts II, III and IV, the allowed scope of monetary damages is encompassed in 15 U.S.C. § 1117(c).  Accordingly, judgment on Counts II, III and IV is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

award of statutory damages is appropriate despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *Playboy Enter., Inc. v. Universal Tel–A–Talk, Inc.*, No. Civ. A. 96–6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104–177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also Petmed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "[e]specially appropriate in default judgment cases due to infringer nondisclosure").

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1220. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. *See Arista Records, Inc. v. Beker Enter., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. *See id.* at 1313 (listing cases).

Here, the allegations in the Complaint, which are taken as true, establish that Defendants intentionally copied the Tiffany Marks for the purpose of deriving the benefit of Plaintiff's international reputation. *See, e.g.*, Am. Compl. ¶¶ 26, 29–31. Regardless, willfulness may be inferred because Defendants defaulted in this case. *See Arista Records, Inc.*, 298 F. Supp. 2d at 1313. Therefore, the Lanham Act permits the Court to award up to $2,000,000.00 dollars per

infringing mark per type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities. § 1117(c)(2).

Because of Defendants' extensive and willful counterfeiting and in order to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, the Court finds that statutory damages in the amount of $1,000.000.00 against each Defendant is just. *See Mycoskie, LLC v. 1688best*, No. 18-cv-60925-KMM (S.D. Fla. Sept. 5, 2018), ECF No. 47 (awarding statutory damages in the amount of $1,000,000.00 against each defendant); *Goyard St-Honore v. Agote*, No. 17-cv-62276-KMM (S.D. Fla. Apr. 19, 2018), ECF No. 49 (same); *Cartier Int'l A.G. v. replicapanderaiwatches.cn*, No. 17-cv-62401-KMM (S.D. Fla. Apr. 2, 2018), ECF No. 65 (same).

### C.    Permanent Injunction

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See, e.g.*, *Petmed Express, Inc.*, 336 F. Supp. 2d at 1222–23. A defendant's failure to respond or otherwise appear in an action makes it difficult for a plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d. 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that

defendant's infringing activity will cease.  Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006).  Plaintiff has carried its burden on each of the four factors.  Accordingly, permanent injunctive relief is appropriate.

Plaintiff has established that it has suffered irreparable harm.  Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm."  *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.").  Plaintiff's Amended Complaint alleges that Plaintiff has suffered and will continue to suffer irreparable harm absent a permanent injunction.  Am. Compl.  ¶ 37.  Further, the Amended Complaint alleges, and Plaintiff's submissions show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiff's genuine products and "are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase."  *Id.* ¶¶ 25, 26, 33.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs and Subject Domain Names because Plaintiff cannot control the quality of what appears to be its products in the marketplace.  *See id.* ¶¶ 37, 45, 53, 58, 63.  An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants'

infringing and counterfeiting actions are allowed to continue.  Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace.  By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act.

Finally, the public interest supports the interest in the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products.  *See Nike, Inc. v. Leslie*, No. 85–960 Civ–T–15, 1985 WL 5251, at \*1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public in protecting consumers from such behavior.").  Accordingly, Plaintiff is entitled to a permanent injunction.

Plaintiff requests that the Court order the (i) cancellation, or at Plaintiff's election, transfer of the domain names at issue to Plaintiff, (ii) assignment of all rights, title and interest to the Subject Domain Names to Plaintiff, (iii) permanent delisting or deindexing of the Subject Domain Names from all search engines, (iv) permanent disablement and/or termination of Defendants' private message application accounts, including e-mail addresses, and (v) the removal of the listings and associated images of the goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks used by Defendants from all Internet marketplace, social media, and image hosting websites, and private messaging platforms to ensure the associated e-commerce stores, photo albums, and social media accounts and websites may no longer be used as a means for selling goods bearing and/or using counterfeits and infringements of Tiffany's trademarks and infringing upon Tiffany's intellectual property rights.  Mot. at 2.

The Court's broad equity powers allow it to fashion injunctive relief necessary to stop the Defendants' infringing activities.  *See, e.g.*, *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) (internal quotation marks and citation omitted) ("Once a right and a violation

have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case."); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").  District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name.  *See* 15 U.S.C. § 1125(d)(1)(C), (d)(2).  However, courts have not limited the remedy to that context.  *See, e.g.*, *Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230 n.2, 231 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that § 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co.*, 441 F. Supp. 2d at 853 (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Here, Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights.  Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities.  Ordering the cancellation or transfer of the Subject Domain Names identified on Schedule "A" of Plaintiff's Motion for Entry of Final Default Judgment, *see* Mot. at 19–21, to Plaintiff, where they may be disabled from further use as platforms for the sale of counterfeit goods, is appropriate to achieve this end.

IV.     **CONCLUSION**

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff's Motion for Entry of Final Default Judgment Against the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (ECF No. 53) is GRANTED. Accordingly, it is hereby ORDERED AND ADJUDGED that:

1.      Pursuant to Federal Rules of Civil Procedure 55 and 58, Final Default Judgment is hereby entered in favor of Plaintiffs and against Defendants as to all counts of the Amended Complaint.

2.      Pursuant to Federal Rule of Civil Procedure 65, Defendants and their officers, agents, representatives, servants, employees and attorneys, and all persons acting in concert and participation with them are hereby PERMANENTLY RESTRAINED AND ENJOINED from

   a.      manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing Plaintiff's trademarks identified in Paragraph 16 of the Amended Complaint (the "Tiffany Marks");

   b.      using the Tiffany Marks in connection with the sale of any unauthorized goods;

   c.      using any logo, and/or layout which may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff;

   d.      falsely representing themselves as being connected with Plaintiff, through sponsorship or association;

   e.      engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff;

f.   using any reproduction, counterfeit, copy, or colorable imitation of the Tiffany Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants;

g.   affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendants as being those of Plaintiff or in any way endorsed by Plaintiff;

h.   otherwise unfairly competing with Plaintiff;

i.   using the Tiffany Marks, or any confusingly similar trademarks, within domain name extensions or on e-commerce marketplaces, social media, or image hosting websites, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet based e-commerce stores, websites, businesses registered by, owned, or operated by Defendants, including the Internet based e-commerce stores, photo albums, and commercial Internet websites operating under all of the Seller IDs and Subject Domain Name; and

j.   effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

3.   Plaintiff is entitled to the following EQUITABLE RELIEF:

a.   To give practical effect to the Permanent Injunction, the Subject Domain Name identified on Schedule "A" hereto, is hereby ordered to be IMMEDIATELY TRANSFERRED by Defendants, their assignees and/or successors in interest or title, and the Registrar to Plaintiff's control. To the extent the current Registrar does not facilitate the transfer of the Subject Domain Name to Plaintiff's control within five (5) days of receipt of this Judgment, upon Plaintiff's request, the top level domain (TLD) Registry for the Subject Domain Name, or its administrators, including backend registry operators or administrators, shall, within thirty (30) days, (i) change the Registrar of Record for the Subject Domain Name to a Registrar of Plaintiff's choosing, and that Registrar shall transfer the Subject Domain Name to Plaintiff, or (ii) place the Subject Domain Name on Registry Hold status for the life of the current registration, thus removing them from the TLD zone files maintained by the Registry which link the Subject Domain Name to the IP addresses where the associated website is hosted;

16

b.      Defendants, their agent(s) or assign(s), shall assign all rights, title, and interest, to its Subject Domain Name to Plaintiff and, if within five (5) days of receipt of this Order a Defendant fails to make such an assignment, the Court shall order the act to be done by another person appointed by the Court at the Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a);

c.      Defendants, their agent(s) or assign(s), shall instruct all search engines to permanently delist or deindex the Subject Domain Name and, if within five (5) days of receipt of this Order a Defendant fails to make such a written instruction, the Court shall order the act to be done by another person appointed by the court at the Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a);

d.      The Plaintiff may serve this injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are used by the Defendants in connection with the Defendants' promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the Tiffany Marks;

e.      Upon the Plaintiff's request, any messaging service and Internet marketplace, social media, and image hosting website operators and/or administrators for the Seller IDs, including but not limited to Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform, DHgate.com, Instagram.com, Joom.com, Wanelo.co, WhatsApp, Wish.com, and Yupoo.com, shall permanently remove from the multiple platforms, which include, *inter alia*, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks via the e-commerce stores and Internet based photo albums operating under the Seller IDs on Schedule "A" hereto, and any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks associated with and/or linked to the same sellers or any other e-commerce store names, photo albums, seller identification names, user names, private messaging accounts being used and/or controlled by the Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks;

f.      Upon the Plaintiff's request, any Internet marketplace, social media, and image hosting website operators and/or administrators who are in possession, custody, or control of the Defendants' goods bearing and/or using one or more of the Tiffany Marks, including but not limited to Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform, DHgate.com, Instagram.com, Joom.com, Wanelo.co, WhatsApp,

17

Wish.com, and Yupoo.com, shall permanently cease fulfillment of and sequester those goods, and surrender the same to the Plaintiff; and

g.   Upon Plaintiff's request, Defendants shall request, in writing, permanent termination of any Seller IDs, messaging services, user names, and social media accounts they own, operate, or control on any messaging service and social media platform specifically including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform, DHgate.com, Instagram.com, Joom.com, Wanelo.co, WhatsApp, Wish.com, and Yupoo.com.

4.   Plaintiff is entitled to the following statutory damages in addition to the permanent injunctive relief awarded to Plaintiff:

a.   Plaintiff is awarded $1,000,000.00 against each Defendant pursuant to 15 U.S.C. § 1117(c), for which let execution issue forthwith.

5.   All funds currently restrained or held on account for all Defendants by all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd. and Alipay.com Co., Ltd. (collectively, "Alipay"), Worldpay US, Inc. ("Worldpay"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, SIA Joom, which operates the Joom.com platform ("Joom"), PayPal, Inc. ("PayPal"), Wanelo.co ("Wanelo"), Stripe, Inc. ("Stripe"), and ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), and their related companies and affiliates, are to be immediately (within 5 business days) transferred by the previously referred to financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms and by Defendant, to

Plaintiff and/or Plaintiff's counsel in partial satisfaction of the monetary judgment entered herein against each Defendant. All financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including but not limited to AliExpress, Ant Financial Services, Alipay, Worldpay, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, Joom, PayPal, Wanelo, Stripe, and ContextLogic, and their related companies and affiliates, shall provide to Plaintiff at the time the funds are released, a breakdown reflecting the (i) total funds restrained in this matter per Defendant; (ii) the total chargebacks, refunds, and/or transaction reversals deducted from each Defendant's funds restrained prior to release; and (iii) the total funds released per Defendant to Plaintiff.

6.    Plaintiff is awarded interest from the date of this Order, compounded annually pursuant to the provisions of 28 U.S.C. § 1961.

7.    The Court retains jurisdiction to enforce this Judgment and permanent injunction.

8.    The Clerk of Court SHALL RELEASE the $10,000.00 bond posted by Plaintiff.

The Clerk of Court is instructed to CLOSE this case. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this  26th  day of June, 2020.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c: All counsel of record

## SCHEDULE "A"

## DEFENDANTS BY NUMBER, SELLER ID, SUBJECT DOMAIN NAME, PAYMENT ACCOUNTS AND MEANS OF CONTACT

| Def. No. | Defendant/Seller ID/Subject Domain Name | Store No. / Store URL | Financial Account / Payee | Infringing Product Number | Additional Means of Contact |
|---|---|---|---|---|---|
| 1 | GUOGUOSHENGYI BEANS Store | Store No. 4991400 | Aliexpress | 33019537250 | |
| 2 | sicily Store | Store No. 5478104 | Aliexpress | 4000453110366 | |
| 3 | Suri Store | Store No. 5484262 | Aliexpress | 4000468281890 | |
| 4 | Alex_alex | Store No. 21273789 | DHGATE | 482743591 | |
| 7 | beichongjewelry | Store No. 20325209 | DHGATE | 399872096 | |
| 8 | brose1 | Store No. 20198299 | DHGATE | 408795053 | |
| 9 | cocoluxury | Store No. 21242009 | DHGATE | 479186359 | |
| 10 | designer_a_lee | Store No. 21259949 | DHGATE | 458726030 | |
| 11 | dh_shopping02 | Store No. 21175412 | DHGATE | 468275856 | |
| 13 | domesticcat | Store No. 21211044 | DHGATE | 501428144 | |
| 15 | jewelry_farr | Store No. 21153428 | DHGATE | 478661325 | |
| 16 | Ligongda6 | Store No. 21211889 | DHGATE | 457171553 | |
| 17 | mickeybigmouse | Store No. 21175418 | DHGATE | 462651736 | |
| 19 | uppoint | Store No. 21159557 | DHGATE | 432527737 | |
| 23 | yingwei9688 | Store No. 21285645 | DHGATE | 486569451 | |
| 24 | zj475633650 | Store No. 21043396 | DHGATE | 502304710 | |
| 25 | a8903 | Store No. 21224967 | DHGATE | 514951765 | |
| 26 | aa89650002 | Store No. 21155319 | DHGATE | 514948764 | |
| 28 | Ameis | Store No. 20776158 | DHGATE | 466435145 | |

| 29 | az2027 | Store No. 21200104 | DHGATE | 516012637 | |
| 31 | cc89650004 | Store No. 21156328 | DHGATE | 515859618 | |
| 32 | cgnfgnfdb | Store No. 21415215 | DHGATE | 515068205 | |
| 35 | Cygj111 | Store No. 21091164 | DHGATE | 447754908 | |
| 36 | dodogogo | Store No. 21424032 | DHGATE | 512860570 | |
| 37 | Dunhang05 | Store No. 21037653 | DHGATE | 496944264 | pinkhenan@gmail.com |
| 38 | Enjoy_time | Store No. 20755081 | DHGATE | 494273163 | |
| 40 | Gg1125 | Store No. 21251954 | DHGATE | 514945848 | |
| 41 | go888store | Store No. 21200507 | DHGATE | 448320476 | |
| 43 | Goodsyiwu | Store No. 19956338 | DHGATE | 405095024 | |
| 44 | Goood4store | Store No. 21200508 | DHGATE | 494833899 | |
| 46 | Hot4u | Store No. 21200836 | DHGATE | 500978319 | |
| 48 | Junemay | Store No. 21016220 | DHGATE | 473809043 | |
| 49 | kewl333 | Store No. 21438422 | DHGATE | 519774143 | |
| 50 | lifengxia2020 | Store No. 21400194 | DHGATE | 514943132 | |
| 52 | lxh849880872 | Store No. 20972538 | DHGATE | 515853134 | |
| 53 | Mandyjewelry02 | Store No. 21059845 | DHGATE | 415841816 | |
| 53 | mandyjewelry.cn | | 286342755@qq.com | | szpanmoer@163.com 15368967@qq.com |
| 53 | 18038178719 | https://18038178719.x.yupoo.com/albums/67355195?uid=1 | 286342755@qq.com | | WhatsApp: +86180 9891 2518 |
| 55 | qiye005 | Store No. 21410882 | DHGATE | 514928232 | |

| | | | | |
|---|---|---|---|---|
| 56 | qiye006 | Store No. 21410784 | DHGATE | 516687118 | |
| 57 | qiye007 | Store No. 21410785 | DHGATE | 516676178 | |
| 58 | qiye008 | Store No. 21410884 | DHGATE | 516651806 | |
| 59 | uphot | Store No. 21159556 | DHGATE | 455820230 | |
| 60 | Ustore8 | Store No. 21200501 | DHGATE | 498880903 | |
| 61 | w0040 | Store No. 21432502 | DHGATE | 516522143 | |
| 62 | w0043 | Store No. 21433215 | DHGATE | 519516641 | |
| 63 | wanshihengtong | Store No. 21345787 | DHGATE | 503212299 | |
| 64 | xiaohongliang2020 | Store No. 21403359 | DHGATE | 514940799 | |
| 65 | Xiaopi1008 | Store No. 20368185 | DHGATE | 507189439 | |
| 67 | yaoming_logo | Store No. 21239948 | DHGATE | 514946931 | |
| 69 | z632529 | Store No. 21211678 | DHGATE | 488326316 | |
| 70 | Zj501288 | Store No. 20087400 | DHGATE | 466006841 | |
| 72 | sylvia77love | https://www.instagram.com/sylvia77love/ | 332164401@qq.com | B544ZaTJhxT | WhatsApp: +86 135 4448 9828 Email: sevenfantastic@hotmail.com |
| 73 | AD-Hanjin31 | 1513248244 727993520-207-3-709-1454639044 | Joom USA Inc | 5cc0376736b54d0101644cb0 | |
| 74 | irene1 | 1506395754 306861932-16-3-709-2900369617 | Joom USA Inc | 5cb6e83036b54d0101323fb3 | |
| 77 | My Jersey Shop | | | | |
| 77 | myjerseysshop | https://wanelo.co/myjerseysshop | Wanelo | 76992782 | |

| 78 | Yiwu wholesale mall | 583294ce15 91451165f1 2d50 | PayPal * Wish | 5d4f86b5c3551 273df5ae86a | |
|----|---------------------|------------------------------|---------------|---------------------------|---|